SARAH E. MARSHALL et al. v. MRS. P. G. HARRIS.

**Ejectment — Will — Construction — Devise of Land Upon Condition.**

A devise of land to a certain donee "to dispose of at his option," upon condition that he come to years of majority and be *compos mentis,* with a limitation over to others contingent upon the failure of the condition, vests a fee simple estate in the first devisee upon the happening of the conditions, and defeats the rights of those who were to take on failure of the contingency.[1]

Ejectment by appellants against appellee to recover certain lands described in the declaration. From verdict and judgment for defendant, plaintiff appeals.

D. N. Harris died in February, 1858, testate. By the first clause of his will he named his brother, James O. Harris, executor, and directs that after the payment of all his debts the executor should have $4,000; the remainder of his estate, real and personal, to be equally divided between James O. Harris and the legal heirs of a deceased brother, Charles T. Harris. The second and third clauses of the will are as follows:

"2. It is my desire that my execution shall have set aside from the property going to the heirs of my deceased brother, Charles T.

---

1

Decedent's will devised certain lands to two grandsons. If either of them died without issue, the land was to go to the survivor, and, if both died, to revert to decedent's son and daughter. After executing a deed of trust, one grandson died without issue, the other having issue. *Held,* that the issue took the land by descent, subject to incumbrances placed thereon by their ancestors. Halsey *v.* Gee, 30 So. 604.

A devise to one for her natural life, and at her death to the heirs of her body, conveys the fee to the first taker. Harris *v.* McCann, 75 Miss. 805; 23 So. 631.

A testator devised a life estate to his wife, with remainder to his children who should be alive at her death, and provided that if any child should have died, leaving children, such children should take the part the parent would have taken if alive. Pending the life estate, one of the testator's daughters died, leaving children who survived the life tenant. *Held, that* the daughter took a defeasible fee in remainder, which was divested by her death pending the life estate, and hence her children took as purchasers under the will, and not by descent. Dunlap *v.* Fant, 74 Miss. 197; 20 So. 874.

Harris, a sufficiency to classically educate my nephew, David D. Harris; it is also my desire that he shall have my watch for his sole use and benefit. It is further my desire that his education shall be conducted under the supervision of my executor, provided he can get control of him. It is further my desire that should he come to the years of majority my executor shall hand over to him his relative part of my estate to dispose of at his option, provided he be *compos mentis,* if not, then to be disposed of as hereinafter mentioned.

"3. After having made provision in accordance with the second section, it is my desire that the remainder of my estate going to the heirs of my deceased brother shall be held and disposed of by my executor, as to him may seem best, for the sole use and benefit of said heirs as hereinafter set forth. In case either one should die without leaving issue, his or her proportional part shall be equally divided between the other two; but in case two of them should die without leaving issue, then their respective parts to be equally divided between the remaining one and the heirs of my executor, James O. Harris, collectively, or in case they shall all die without leaving issue then all of their property shall revert to the heirs of my executor above named."

The fourth clause directed that in case either of the daughters of the testator's deceased brother should marry, and the executor was satisfied that her husband had steady, economical business habits, she should have delivered to her the property devised to her, but unless satisfied on this point the executor should retain the same and pay the "proceeds" over for the benefit of such devisee and her children. In case of the death of one or both of the testator's said nieces without issue, the property devised to such deceased niece or nieces was directed to "be disposed of as already provided for."

David D. Harris, the testator's nephew, reached the age of twenty-one years, was then and ever afterward *compos mentis,* and went into possession of the property in controversy, under the will. He died in November, 1876, leaving a widow (the defendant, Mrs. P. G. Harris), but no children or descendants surviving him. The defendant retaining possession of the land so devised to her husband, ejectment was brought by the surviving sister of David D., and the children of the other sister—then deceased. There

was judgment for the defendant in the court below, and plaintiffs prosecute a writ of error.

Appealed from Circuit Court, Tate County, Sam Powel, Judge.

Affirmed, January 17, 1881.

*Attorneys for appellant, Shands & Johnson.*

*Attorneys for appellee, Hall & Boothe.*

Brief of Shands & Johnson:

This record presents two questions, of which we shall call the attention of the court separately.

First—Under the second section of the will, did the nephew, David D. Harris, arriving at majority and being *compos mentis,* take an absolute *fee simple* that cut off all subsequent limitations? Or did he take a fee, determinable, subject to the limitations expressed in the third section of the will?

Second—Is the limitation over to plaintiffs in the third clause of the will, void as an executory devise, for remoteness or for any cause?

The language of the will in the latter part of the second section, in speaking of the nephew, David D., is: "That should he come to the years of majority, that my executor shall hand over to him his relative part of my estate to dispose of at his option, provided he be *compos mentis,* if not, then to be disposed of as hereinafter mentioned." The meaning which appears to us to be given this clause, considering it in the light of the remainder of the instrument, is that if the nephew when coming of age should be *compos mentis,* he should have the control and management of his property; if not, then the executor should retain the management and control of David D.'s share in the same manner that by the fourth section of the will he is directed to retain and manage the shares of the two nieces, should they not marry men of steady business habits. In either event, *compos mentis* or not, David D. took his property subject to the limitations in the third section of the will. By the words, in the clause in question, "if not, then to be disposed of as hereinafter mentioned," we do not think the tes-

tator had special reference to the limitations in the third section of the will, for he is speaking of a disposition to be "then" made by the executor, that is, at the time that David D. should become twenty-one. This is a provision as to David D. when he should come of age and not have capacity to attend to his own affairs; not a provision for the disposition of his property "in case of" his death "without having issue."

Certainly there can be no magic in the words "to dispose of at his option," that overthrows the intention of the testator as manifested by his whole will. It is said that the intention of the testator is the pole star of construction. 1 Redfield on Wills, 433; Smith v. Bell, 6 Peters, 68; Terry v. Wiggins, 2 Lans. 272; Eaton v. Shaw, 18 N. H. 320.

The intention of the testator was manifestly that each of his nieces and his nephew should hold a *fee simple* estate in the property he willed them, but determinable upon the event of either of them dying without issue. In the fourth section of the will, the testator directs that his executors shall hand over to his nieces their respective parts of his estate upon marriage, provided their husbands have steady business and economical habits. If they do not thus marry, the executor is to retain their shares. In like manner, in the second section of the will, the executor is directed to hand over his share to David D. Harris "to dispose of at his option" when he reaches majority, provided he be *compos mentis*. We think it very clear that the marriage of the nieces to desirable husbands and the delivery by the executor to them of their respective shares do not free their property from the limitations in the third section. We can see no reason on the face of the will to place the gift to the nephew upon a higher plane than the bequest to the nieces. It is true he gives his nephew his watch, and makes special provision for his education. This does not show a preference for the nephew, when we consider that the gentleman's watch would not be worn by either of the nieces, and the education of a male is much more expensive, as usually conducted, than is the education of a female. The fourth section of the will displays as much tenderness for the interest of the nieces as is anywhere in the will shown for that of the nephew. But it is urged that the words "to dispose of at his option," used in the latter part of the second section, makes David's estate in the land in controversy, when he reaches twenty-one years of age, and is of sound

mind, an absolute *fee simple,* and cuts off all subsequent limitations. It is to be borne in mind that a fee may be limited after a fee by way of executory devise. Indeed it is one of the distinguishing marks of executory devises, that in his manner a fee may be limited to take effect upon the determining of a fee, whereas by remainder this cannot be done. 2 Redfield on Wills, 264, 7 and 8; 4th Kent, marginal page, 269; Blackstone, side page, 173.

The authorities fully sustain the position that the *fee simple* after which the subsequent estate is limited, is created by terms as absolute as are ever used to create an absolute *fee simple,* not subject to future contingencies. Indeed, the *fee simple* estate in the first donee is *absolute,* but subject to be divested upon the happening of the contingency mentioned in the will.

Shaw, C. J., in case of Noghtingale *v.* Burrell, 15 Pickering, 113, discussing the question whether a contingent devise is an executory devise or a remainder, uses this language: "But if properly described, the event of a person's dying without leaving issue surviving or not, is a contingency upon which an executory devise may be limited over, as well as the happening of any other event. And there may be very good reasons why a testator should select this event, as one upon the happening of which, or not, the estate *should remain absolute* in the first devisee or go over to some secondary object of the testator's bounty. He may properly consider that if the devisee, a son for instance, the first object of his bounty, has children who survive him, he shall have the estate *absolutely,* to enable him to provide for such children, but leaving it to *his discretion* whether he will transmit the estate to them, or make any other disposition of it as he, such first devisee, *may determine.* But if such first devisee should leave no children to be provided for, the testator might well determine to adopt his own mode of disposing of the estate, and direct it in that event to vest in some other person."

In the celebrated Mississippi case of Jordan *v.* Roach, 32 Miss. 481, the language of the will was, "To make my intention plain, the property in this my last will and testament devised and bequeathed to my daughter is for her sole and separate use and behoof and her heirs forever; but, should she die without issue, or if her child or children surviving her, should die before arriving at the age of twenty-one, then the estate herein devised shall revert to my other children and their heirs, share and share alike,

according to the law of this State." It was held in this case that Mrs. Jordan took an estate in fee, determinable by the happening of a specified event, and that the limitation to the other children was an executory devise. The limitation over in this case failed, not because of the absolute language conferring the fee upon the first devisee, but because of the remoteness of the limitation itself. It strikes us with considerable force that the language used by the testator in the Jordan-Roach will in bestowing the property upon Mrs. Jordan, would not be strengthened by substituting the words in question, "to dispose of at her option." When we consider that the first devisee takes an *absolute* fee, and determinable only upon the happening of the contingency mentioned, it follows as a necessary conclusion that the strength of the terms creating the estate of the first taker, can have no influence upon the subsequent limitation. So far as reason and authority go, we can discover no difference in the language used to create a fee absolute and that used to create a fee after, which is limited an executory devise. While it is true that the first takes a *fee simple* estate of which he can make any disposition he pleases, provided the contingency upon which the fee is to determine does not happen, yet it is well recognized that no act of the first devisee can defeat the limitation over upon the happening of the event upon which it is to take effect. And if the instrument which attempts to create an executory devise shows that the first taker has absolute right of disposition of the property and power to defeat the contingent limitation, such limitation is absolutely void. 4th Kent, 270 (Marg.); 2 Washburn on Real Property, 669; 2 Redfield on Wills, 278-33; Ide *v.* Ide, et al., 5 Mass. 500; Jackson *ex dem v.* Brewster & Bull, 10 Johnson, 19.

This doctrine, however, has no application to the case at bar. For, gathering the intention of the testator as manifested by his whole will, and we clearly see that the optional disposition of David D. Harris' property was dependent upon two contingencies, his being *compos mentis,* when arriving at majority and having children who should survive him.

"It was remarked by Chancellor Kent, 4 Comm. 534, margin, that adjudged cases become of less authority and are of more hazardous application, in the interpretation of wills, than decisions upon any other branch of the law. This is so, because of the very large liberty allowed in devising estates, and because of the loose,

rude, and perplexed language often used; and because the court in every instance attempts to reach the intention of the testator. Tatum *v.* McClellan, 50 Miss. 6.

Again, a careful examination of the authorities above quoted, and in fact of nearly all the cases that can be collected upon that point, shows that there were other expressions in the instruments from which the absolute power of disposition by the first devisees was shown than from the language used to bestow the estate upon them. The cases quoted by Chancellor Kent in 4th Comm. 270, Marg., to illustrate the principle, were where an estate was "devised to A in fee and if he dies *possessed* of the property without lawful issue, the remainder over, or remainder over the property which he, dying without heirs, should *leave,* or without selling, or devising the same." The illustration of the principle given in 2d Redfield on Wills, 278, is in these words: "Thus a devise to the testator's son, P, of certain real and personal estate, and to his heirs and assigns forever, adding, that if P should die, and leave no lawful heirs, what estate he *should leave* to be equally divided between another son and grandson of the testator, naming them, it was held that the devise over was void, as being inconsistent with the absolute interest in the first devise." Ide *v.* Ide et al., 5 Mass. 500, is the case used by Redfield in above quotation, and the case in 10 Johnson, 19, is the one stated by Chancellor Kent. In each of the above illustrations of the principle, where the limitation over was held void, because inconsistent with the absolute power of disposition in the first taker, this power of disposition was gathered, not from the words used to bestow the property upon the first taker, but from other terms in the will, usually in the limitation clause itself. That it should be so seems to us to be a necessary conclusion from the very nature of executory devises. As we have before shown, the first taker has an absolute *fee simple* estate, subject, however to be determined upon the happening of a certain contingency. Now, where would be the reason in asserting that the very terms used to create the *fee simple* estate in the first taker, a necessary essential to constitute the subsequent limitation an executory devise, should be construed so as to give the first devisee the power to defeat the subsequent estate and render the limitation void? We submit, therefore, that the language used by the testator, "to dispose of at his option," in bestowing the property upon the nephew, David D., does not defeat the

limitation in the third section of the will considered as an executory devise.     We call the attention of the court to the case of Smith *v*. Bell, 6 Peters, 68, as throwing light upon this branch of the present case.     \*     \*     \*

Brief of Hall & Boothe:

We submit that the judgment of the court below should be affirmed, for the following reasons:

Looking to the whole will to discover the intention of the testator, it is manifest that he did not intend to limit the estate devised to his nephew, David D. Harris, except in the contingency of his failing to reach the years of majority, or, having reached that age, being *non compos mentis*.     The whole will shows that the nephew was the especial object of the testator's solicitude (as between the children of his deceased brother), and that he not only did not but never intended to put David upon terms of perfect equality with his sisters.

Provision is made for his education under the supervision of the executor, the funds for which purpose were deducted from the total property devised to all the heirs of the deceased brother, and not from the proportional part of David alone.     The testator's watch was given to him, and the executor was specially directed to give him possession and control of the property devised, upon his majority, being *compos mentis;* whereas the executor was directed to retain the property devised to the nieces, and to control and manage the same indefinitely, unless they should marry men whose business habits were satisfactory to him.     And, further, no power to dispose of the property devised to them is anywhere given to the nieces in any event, while it is broadly and unequivocally conferred upon David.     These provisions show that the nephew, in the estimation of the testator, "stood upon a higher plane" (to use the language of counsel for plaintiff), than his sisters, and was intended to be specially favored in the disposition of the testator's property.

It is impossible to reconcile the different clauses of the will upon any other hypothesis than that here presented.     The limitations in the third clause of the will, if applied generally to David (as to his sisters), are wholly inconsistent with the general power of disposition contained in the second clause.     The two cannot stand together, except in the single case of David being held to

take only a *life estate* with a power of disposition, which is not contended for by counsel for plaintiffs. It is admitted that he took, at least, a conditional fee. What the condition was, is the point of difference. If it be held that the condition was his attaining his majority and being of sound mind, the will is consistent. Note the language of the second clause: "Should he come to years of majority my executor shall hand over to him his relative part of my estate to *dispose of at his option,* provided he be *compos mentis,* if not, *then* to be disposed of as hereinafter mentioned." The words "hereinafter mentioned" refer evidently to the third clause, containing the limitations, and the testator has carefully defined the *only* contingency in which David's interest was to be affected by that clause, viz: his death during minority, or unsoundness of mind. If this be not true, and the theory of counsel for plaintiffs be adopted, then the words in the second clause which give to David a general power of disposal must be judicially expunged from the will. But this will never be done by the courts as long as there is any way of reconciling the different provisions of a will, and rendering them all operative. And, further, the law favors estates in fee. The statutory presumption is, that a fee was devised, unless the limitation clearly and expressly applies to the devisee. Code 1857, p. 306, art. 2.

Even if the testator intended that the limitations in the third clause of the will should apply to David D. Harris to the same extent as to his sisters, yet, having given to him by the second and wholly separate clause, a conditional *fee simple,* with absolute and unqualified power of disposition, the limitation over is void.

The will in this case presents for consideration an executory devise. "The essential quality in executory devises which gave to the distinction between them and contingent remainders its chief importance, was this: that such interests are not in general liable to be affected by any alteration in the preceding estate." 2 Jarman on Wills, 495.

And nothing is better settled than that when the first taker has an absolute power of disposal, by which the limitation over may be defeated, there can be no valid executory devise. 2 Redfield on Wills, 278; 1 Sandf. Ch. 274; 24 Pick. 146; 52 N. H. 267; 10 Johns. 18; 11 Johns. 365; 13 Johns. 537; 15 Johns. 169; 16 Johns. 537; Nelson *v.* Cooper, 4 Leigh, 408; Ide *v.* Ide, 5 Mass. 500; 4 Kent, 270, Marg.; 2 Wash. Real Property, 669.

It is urged with apparent seriousness, that the testator only intended to give David Harris a power of disposal subject to the limitation over. If the testator only intended the power to become operative, to that extent the insertion of the words "to dispose of at his option" was a mere waste of language. Without any such expression, David unquestionably had the right to dispose of his interest subject to the contingency of such disposition being defeated by the limitation over, if it applied to him; and the expression quoted could not add to his power in that respect, if restricted to the construction put upon it by counsel for plaintiffs in error. But the court will not give such a construction to any clause of a will as to render it meaningless, if it can be avoided. We submit that the power of disposition here given was intended by the testator to make more plain and unmistakable his intention to free David Harris from the restraints of any limitation over upon his arriving at his majority, sound in mind.    *    *    *

OPINION.—GEORGE, J.:

The second clause of the will of D. N. Harris directed his executor to deliver to his nephew, D. D. Harris, should he come to the years of majority, his share of the estate "to dispose of at his option, provided he be *compos mentis*, if not, then to be disposed of as hereinafter mentioned." We regard this provision as exempting the share of the nephew from the provisions of the third clause of the will, unless the nephew should die under twenty-one years of age, or be *non compos mentis* when he arrived at majority. Neither of these events happened and consequently D. D. Harris received his share in fee according to the provisions of the second clause, and on his death went to his widow, the defendant in error.

The judgment below was in accordance with this view, and is therefore

*Affirmed.*